**SO ORDERED.**

**SIGNED this 7 day of November, 2017.**

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| ALICE M. REDDING | 14-05812-5-SWH |
| | CHAPTER 11 |
| DEBTOR | |

### ORDER DENYING MOTION TO MODIFY

The matter before the court is the Motion to Modify Chapter 11 Plan ("Motion") filed by Alice M. Redding on May 12, 2017, Dkt. 217, and amended on July 24, 2017, Dkt. 242. A response in opposition was filed by America's Servicing Company ("ASC") on June 5, 2017, Dkt. 220. A hearing took place on August 12, 2017 in Raleigh, North Carolina, at which the court took the matter under advisement. Based on the pleadings, hearing, and evidence presented, the court determines that Ms. Redding may not modify her plan.

### BACKGROUND

Alice M. Redding filed a voluntary petition for relief under chapter 11 of the Bankruptcy

Code on October 7, 2014. Ms. Redding's schedules and claims filed indicate assets valued at $777,363.28, secured claims in the amount of $1,680,567.28, unsecured priority claims in the amount of $7,858.52, and unsecured nonpriority claims in the amount of $273,299.00.

On Schedule D, Ms. Redding listed Wells Fargo Bank, N.A. ("Wells Fargo") as a partially secured creditor with a claim in the amount of $1,132,100.56, secured in the amount of $230,000.00. Wells Fargo's servicer, American Servicing Co. ("ASC"), filed a proof of claim on behalf of Wells Fargo based on a promissory note ("Note") executed by the Debtor on May 20, 2003 in the original principal amount of $760,000.00 and secured by a deed of trust on Ms. Redding's real property described as 914 Riverside Avenue, Elizabeth City, North Carolina ("914 Riverside Avenue" or "the Residence"). Wells Fargo is Ms. Redding's largest creditor.

Ms. Redding filed a chapter 11 plan on February 5, 2015 (Dkt. 72), which proposed to treat ASC's claim as a secured obligation in the amount of $250,000.00, with the remaining balance to be treated as unsecured. Ms. Redding also proposed that the secured balance be repaid over a new thirty-year period, and that the payment due date change from the first of every month to the fifteenth. On March 23, 2015, ASC filed an objection to the debtor's plan of reorganization, contending that, under 11 U.S.C. § 1129, its lien could not be modified "because it is secured only by a security interest in real property that is the Debtor's primary residence pursuant to 11 U.S.C. § 1123(b)(5)." (Dkt. 94) Responding, Ms. Redding filed a motion in limine in which she asserted that her plan should be confirmed, arguing that the 914 Riverside Avenue property was not her principal residence at the time the deed of trust was executed. (Dkt. 184) During the confirmation hearing held on October 14, 2015, the plan was confirmed and the court determined that the motion in limine was mooted by confirmation. The court confirmed the debtor's chapter 11 plan in an order

2

entered on November 18, 2015. (Dkt. 197). The confirmed plan provides:

> (3) <u>Treatment</u>. Based upon the rulings made by the Court during the course of the Confirmation Hearing, and irrespective of whether the aforementioned claim is secured only be a security interest, lien or encumbrance in the 914 Riverside Property serving as the Debtor's principal residence pursuant to § 1123(b)(5) of the Banrkutpcy Code, the Debtor shall have a period not to exceed six (6) months following the Effective Date (the "Marketing Period") to sell the 914 Riverside Property, at a public auction, pursuant to §§ 363(b) and 1129(b)(2)(A)(ii) of the Bankruptcy Code and Fed. R. Bankr. P. 6004. During the Marketing Period, the Debtor shall keep all taxes on the 914 Riverside Property current, as well as reimburse or remit a sum sufficient to cover the insurance coverage on the 914 Riverside Property during the Marketing Period. Further, the Debtor shall remit, on a monthly basis and during the Marketing Period, payments of $1,000.00 per month to America's Servicing Company.

Dkt. 197, Exhibit A at 22. The plan also provided that Ms. Redding was to sell the 914 Riverside Property at public auction with a reserve price of $300,000.00, and that proceeds of the sale would be used to satisfy ASC's claim. *Id.* at 22–23.

Ms. Redding did not make any attempts to market or sell the property during the six-month marketing period and failed to make all but two of the $1,000.00 monthly payments. She cited the renovation and sale of unrelated properties as her reason for noncompliance. On April 28, 2017, ASC filed the instant Notice of Default and Failure to Abide by Terms of Confirmation Order, announcing its intent to exercise its rights and remedies under the security documents. (Dkt. 216) Only then did the debtor file the instant motion to modify the plan. (Dkt. 217)

Ms. Redding contends that her motion, filed on May 12, 2017, is based on an increase in value and possible sale of four parcels of her real property located on Southern Avenue in Elizabeth City, North Carolina (the "Southern Avenue properties"). *Id.* Ms. Redding specifically requests that the court allow her to amend the plan to provide Wells Fargo with a deed of trust on the Southern Avenue properties, rescind the requirement that she sell the 914 Riverside Avenue

property, and alter the payment schedule. *Id.* As grounds for these proposed amendments, Ms. Redding maintains that the possible sale and increase in value of properties she owns constitutes a substantial and unanticipated change warranting modification of her plan. In the alternative, she argues that she does not have to prove a substantial and unanticipated change, reasoning that the standard does not apply to 11 U.S.C. § 1127(e) modifications, *i.e.*, modifications made to individual chapter 11 debtors' plans. ASC contends in its response that the standard of proving a substantial and unanticipated change *does* apply to Ms. Redding's proposed modifications, and that the changes in her circumstances fail to meet that standard. (Dkt. 220) ASC also contends that the proposed modification violates 11 U.S.C. § 1123(b)(5) in that it attempts to further modify ASC's rights in its claim secured only by an interest in the debtor's principal residence, and that the proposal violates § 1129(a)(3) in that it was not made in good faith.[1]

The issues before the court are, therefore: (1) whether Ms. Redding satisfies the substantial and unanticipated change standard required for post-confirmation modifications; (2) whether the standard applies to modifications pursuant to 11 U.S.C. § 1127(e); and (3) whether the proposed modifications would run afoul of § 1123(b)(5) and/or § 1129(a)(3).

## DISCUSSION

### A. Modification of a Confirmed Plan

The United States Court of Appeals for the Fourth Circuit has held that in order to evaluate whether post-confirmation modification is warranted, a court must first determine whether "the

---

[1] The court has held that in determining whether real property is a debtor's "principal residence" for purposes of § 1123(b)(5), the court looks to the mortgage documents rather than the petition date. *See In re Proctor*, 494 B.R. 833, 840 (Bankr. E.D.N.C. 2013). That treatment of the issue also constitutes the law of the case here, as this matter was addressed in connection with confirmation and the debtor's now-moot motion in limine; it requires no further discussion.

4

debtor experienced a 'substantial' and 'unanticipated' change in his post-confirmation financial condition." *Murphy v. O'Donnell* (*In re Murphy*), 474 F.3d 143, 150 (4th Cir. 2007) (discussing analysis developed in *In re Arnold*, 869 F.2d 240, 243 (4th Cir. 1989)).[2]  This inquiry serves to "inform the bankruptcy court on the question of whether the doctrine of *res judicata* prevents modification of the confirmed plan." *In re Murphy*, 474 F.3d at 150.  "If the change in the debtor's financial condition was *either* insubstantial or anticipated, or both, the doctrine of res judicata will prevent the modification of the confirmed plan." *Id.* (emphasis added).  If both parts of the standard are satisfied, the court may then consider whether the proposed modification satisfies the remaining statutory requirements.  *See In re Williams*, No. 14-00793-5-JNC, 2016 WL 4069776, *1 (Bankr. E.D.N.C. July 28, 2016).

Here, the debtor argues that a possible increase in value and sale of the Southern Avenue properties constitutes a substantial change in her financial condition.  Ms. Redding bases her belief that the Southern Avenue properties will be sold at a high price on an article in a local newspaper, which states that the Town of Elizabeth City may receive grant money to help its efforts to mitigate flooding.  She states that the city may be given grant money within the next two years, and that the money may be used to purchase the Southern Avenue properties.  Based on the amount Elizabeth City paid to purchase other properties, Ms. Redding believes the properties will eventually be sold for 400% more than their current market price, likely within the next two years.  While courts have deemed the *actual* sale of properties at a price well above market value to be "substantial" because

---

[2] There is a circuit split over whether a debtor must show a substantial and unanticipated change in financial condition to obtain a post-confirmation modification.  While the Fourth Circuit requires such a showing, the First, Fifth, and Seventh Circuits do not.  *Compare Murphy*, 474 F.3d at 150, *with In re Witkowski*, 16 F.3d 739, 746 (7th Cir. 1994), *Barbosa v. Soloman*, 235 F.3d 31, 41 (1st Cir. 2000), and *In re Meza*, 467 F.3d 874, 877–78 (5th Cir. 2006).

of the improvement to a debtor's financial condition, *see Murphy*, 474 F.3d at 152, there has been no such sale in this case. A speculative change in circumstances that may or may not occur in the next two years is not a "substantial" change as contemplated by the *Arnold* analysis and is insufficient to avoid *res judicata*. Because Ms. Redding has not met the first prong of the *Arnold* standard, the court need not consider whether the possible events surrounding the Southern Avenue properties also were unanticipated.

### B. The Chapter 13 Standard Applies to § 1127(e) Modifications

Ms. Redding argues that even if she does not meet the *Arnold* modification standard, she still may prevail because that standard does not apply to modifications to an individual chapter 11 plan under 11 U.S.C. § 1127(e). There is no language in § 1127(e) requiring the debtor to meet the standard, she reasons, and because § 1127(e) separately applies to individual chapter 11 debtors, modifications under that section likewise should be construed separately, and should not be held to the same requirements as post-confirmation modification request under other chapters of the code. The court disagrees, and concludes that a debtor must have experienced a "substantial" and "unanticipated" change in order to modify a plan pursuant to § 1127(e).

A confirmed chapter 11 plan is binding as to both a debtor and the debtor's creditors. 11 U.S.C. § 1141. Section 1127(e) of the Bankruptcy Code does, however, provide for modification of a chapter 11 plan following confirmation *for specifically enumerated purposes*, and the party seeking such modification bears the burden of proof. In interpreting the parameters of 1127(e), the court turns first to the language of the statute. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (noting that "interpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself") (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241

6

(1989)). Section 1127(e) provides:

> (e) If the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, to—
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> >
> > (2) extend or reduce the time period for such payments; or
> >
> > (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

11 U.S.C. § 1127(e).

Much like § 1329(a), which applies to chapter 13 modifications, § 1127(e) makes no mention of the standard set out in *Arnold*. Section 1127(e) also contains a qualifying statement—"If the debtor is an individual"—which creates an ambiguity over whether it should be treated separately from other provisions in § 1127, and, consequently, whether the *Arnold* standard applies. *See Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 248 (4th Cir. 2004) (noting that a statute is ambiguous if it "lends itself to more than one reasonable interpretation"). Here, because the statute is ambiguous, the court may inquire into legislative history and congressional intent. *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 191 (4th Cir. 2011). That endeavor can become somewhat circular, however, because as noted by the Supreme Court of the United States in *Lamie*, the "starting point in discerning congressional intent is the existing statutory text." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)

Congress added § 1127(e) to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Pub. L. No. 109-8, 119 Stat. 23

(2005). In *In re Maharaj*, the United States Court of Appeals for the Fourth Circuit recognized that some BAPCPA amendments were enacted in order to "harmonize the provisions of Chapter 11 as they relate to individual debtors with those of Chapter 13." *In re Maharaj*, 681 F.3d 558, 574 (4th Cir. 2012). Section 1127(e), which gives creditors and debtors the ability to propose post-confirmation amendments to an individual's plan, is one of those amendments. And, its language is identical to § 1329(a)(1)–(3), which applies to post-confirmation modification in the chapter 13 setting. Like other courts to consider the question, this court concludes that the standard for post-confirmation modifications under § 1329(a) applies to modifications sought under § 1127(e), and a "court must . . . determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition." *Murphy,* 474 F.3d at 150; *see also In re Mercer*, No. 09-04088-8-ATS, 2013 WL 6507585, *3 (Bankr. E.D.N.C. Dec. 12, 2013) (discussing *Murphy* and concluding that "the justification for applying a 'substantial and unanticipated' test when considering post-confirmation modifications in chapter 11 is even stronger than in chapters 12 and 13"); *accord In re Adams*, No. 3:14-bk-1934-JAF, 2016 WL 6783271, *3 (Bankr. M.D. Fla. Nov. 14, 2016) ("The Court finds that the same [Chapter 13] standard applies to the post confirmation modification of an individual Chapter 11 case; the Debtor must demonstrate a substantial, unanticipated change in her financial circumstances.")

## CONCLUSION

Here, for Ms. Redding to justify a modification under § 1127(e), it was incumbent upon her to demonstrate (1) a substantial and unanticipated change in circumstance; (2) that the modification sought is for one of the purposes listed in section § 1127(e); and (3) that the proposed modification will comply with § 1127(b). *Cf. In re Williams*, 2016 WL 4069776, at *1. Because Ms. Redding

8

has not met the first prong, she may not modify her plan. Accordingly, based upon the foregoing, the debtor's motion to modify is **DENIED**.

**END OF DOCUMENT**